**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

APOSTOLIC UNITED PENTECOSTAL CHURCH, INC.,

Plaintiff

v. Civil Action No. AW-06-2105

CORONIS BUILDING SYSTEMS, INC., *et al*,

Defendants

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

Presently before the Court are Defendant Ascent Consulting Engineering's ("Ascent") Motion to Dismiss for Lack of Personal Jurisdiction [5], Defendant Chander Nangia's ("Nangia") Motion to Set Aside Default [18], and Plaintiff Apostolic United Pentecostal Church's ("Plaintiff" or "Apostolic Church") Motion for Default Judgment [20] against Defendants Coronis Building Systems ("Coronis") and Nangia. The Motions have been fully briefed by the parties and are ripe for consideration. No hearing is deemed necessary. See Local Rule 105.6 (D. Md. 2004). Upon consideration of the arguments made in support thereof, and opposition to the Motions, the Court will DENY Defendant Ascent's Motion to Dismiss, GRANT Defendant Nangia's Motion to Set Aside Default, and GRANT IN PART and DENY IN PART Plaintiff's Motion for Default Judgment.

## FACTUAL BACKGROUND

Apostolic Church is a Maryland corporation with its principle place of business in Prince

George's County, Maryland. Apostolic Church executed a sales agreement with Defendant Coronis to purchase TRUSSFRAME, a custom, pre-engineered, pre-fabricated structural steel frame building, to use as the Apostolic Church sanctuary building. Coronis agreed to manufacture and deliver to Plaintiff TRUSSFRAME system components and various drawings to assist in the erection of the sanctuary. Plaintiff hired Yorktowne Construction Company ("Yorktowne") to erect the building. In December 2005, after the sanctuary was erected, Yorktowne discovered that TRUSSFRAME system components had a "spreading problem." Yorktowne, on Plaintiff's behalf, contacted Coronis to discuss the spreading problem. Coronis worked with Defendant Ascent, a New Jersey limited liability company with its principle place of business in Ringwood, NJ, which assisted Coronis in the preliminary design of the TRUSSFRAME system, to assist Yorktowne in fixing the spreading problem. Coronis corresponded directly with Jim Marx ("Marx"), principal of Ascent, regarding the spreading problem. Coronis copied Marx on correspondence regarding the spreading problem with Plaintiff, Yorktowne, and Geophysical Consultants ('Geophysical"), which was hired by Plaintiff to perform structural inspections on the TRUSSFRAME system. Coronis and Marx also participated in at least one conference call with Geophysical to discuss the various procedures for resolving the problem in a concerted effort to complete the project.

In February 2006, after erecting the sanctuary, Plaintiff realized and notified Coronis that the drawings provided by Coronis for the TRUSSFRAME system had not been sealed or stamped by a licensed Maryland Professional Engineer, as required by Maryland law. Coronis had the plans stamped by Defendant Nangia, a licensed Maryland Professional Engineer, and sent them to Apostolic Church.

In March 2006, Marx wrote directly to Apostolic Church regarding Geophysical's

investigation and inspection of the TRUSSFRAME system, requesting that Plaintiff forward him pictures taken during the investigation so that Marx and Coronis could determine the cause of the spreading problem. None of the solutions suggested by Ascent and Coronis fixed the problem and a consultant to the Plaintiff determined that the faulty and deficient fabrication and design of the TRUSSFRAME system caused the spreading problem. Apostolic Church notified Defendants of the deficiencies in the system discovered by the consultant and its plan to implement the consultant's repair recommendations, but Coronis and Nangia failed to respond and Ascent declined to participate in the repair of the structure.

On August 14, 2006, Plaintiff commenced this action against Defendants in the United States District Court of Maryland. Specifically, Apostolic Church contends that as a result of Defendants' refusal to cure the deficiencies of the TRUSSFRAME system, negligence, lack of cooperation, and their omissions and improper acts, Apostolic Church has suffered months of delay in completing the construction of its church and significant, unforeseen costs. The Clerk of the Court entered default as to Nangia for want of answers or other defenses on September 26, 2006, and as to Coronis for want of answers or other defenses on November 9, 2006.

## DISCUSSION

### ***Motion to Dismiss***

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Rule 12(b)(2) of the Federal Rules of Civil Procedure, "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs, Inc., 334 F.3d 390, 396 (4th Cir. 2003) (quoting Combs v. Bakker, 886

F.2d 673, 676 (4th Cir. 1989)). "If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." Combs, 886 F.2d at 676. If the court chooses to rule without conducting an evidentiary hearing, relying solely on the complaint, affidavits, and discovery materials, "the plaintiff need only make a prima facie showing of personal jurisdiction." Carefirst, 334 F.3d at 396. "In deciding whether the plaintiff has made the requisite showing, a court must take all disputed facts and reasonable inferences in favor of the plaintiff." Id.

I. Applicable Law

A court may exercise personal jurisdiction over a nonresident defendant "if (1) an applicable state long-arm statute confers jurisdiction, and (2) the assertion of that jurisdiction is consistent with constitutional due process." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993). Maryland courts have consistently held that Maryland's long-arm statute, Md. Code Ann., Cts & Jud. Proc. § 6-103, extends to the limits allowed by the Constitution under the Due Process Clause of the Fourteenth Amendment, and therefore, the statutory inquiry merges with the constitutional inquiry. See Carefirst, 334 F.3d at 396-97. A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum state, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Under the due process analysis, two types of personal jurisdiction exist: specific jurisdiction and general jurisdiction. Specific jurisdiction is available when the nonresident defendant's contacts with the forum state also provide the basis for the suit. See Carefirst, 334 F.3d at 397. In determining whether specific jurisdiction exists, a court considers "(1) the extent to which the defendant has

purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). On the other hand, general jurisdiction is available only where the nonresident defendant's contacts with the forum state are "continuous and systematic." Id. at 712; see also Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414 (1984).

## II. Analysis

Plaintiff must make a prima facie showing of personal jurisdiction by demonstrating that Defendant is subject to Maryland's long-arm statute, which confers personal jurisdiction over a party who, *inter alia*, "[t]ransacts any business or performs any character of work or service in the State" or "causes tortious injury in the State by an act or omission in the State." MD. CODE ANN., CTS & JUD. PROC. § 6-103(b).

Ascent asserts that it maintains its office exclusively in New Jersey and that it does not solicit, conduct or transact business in Maryland nor has Ascent sold or contracted to sell any goods or services in Maryland. Ascent also contends that its involvement in this case was limited to the preliminary design of some of the structure's basic dimensions and that this preliminary design, along with one conference call with Apostolic Church's consultant in Maryland and a letter sent to Plaintiff by Marx are insufficient contacts to serve as a basis for personal jurisdiction in Maryland.

Apostolic Church asserts that it made a prima facie showing of personal jurisdiction when it alleged that Ascent purposefully directed its activities by designing the TRUSSFRAME system. Plaintiff also asserts that there is personal jurisdiction over Ascent because Ascent involved itself

in the process of determining the cause of the spreading problem with the TRUSSFRAME system and discussed solutions. Specifically, Plaintiff points to Ascent having the following contacts with Maryland: (1) Ascent engineered and designed the TRUSSFRAME system to be erected in Maryland; (2) Ascent engaged in discussions with consultants for Plaintiff in Maryland regarding the TRUSSFRAME system; and (3) Ascent directed correspondence to Apostolic Church in Maryland related to the design and subsequent problems with the TRUSSFRAME system.

Given the facts, it is clear that there is no general jurisdiction over Ascent. Ascent's contacts with the State of Maryland are not continuous or systematic. Thus the Court will focus its discussion on whether personal jurisdiction exists over Ascent under the specific jurisdiction theory.

Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Moreover, the Due Process Clause requires that "individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign'" and the "'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities to the residents of the forum . . . and the litigation results from alleged injuries that 'aries out of or relate to' those activities." Id. at 472. Thus, specific jurisdiction requires that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hailed into court there." Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also August v. HBA Life Ins. Co., 734 F.2d 168, 173 (4th Cir. 1984). To determine whether a defendant purposefully established minimum contacts within a forum, courts weigh specific facts including whether the defendant initiated the business relationship in some way,

contemplated future consequences, terms of the contract, and the parties' actual course of dealing. See Burger King, 471 U.S. at 479; Johansson Corp. v. Bowness Constr. Co., 304 F. Supp. 2d 701, 705 (D. Md. 2004) (stating that an important factor is whether the defendant initiated the business relationship).

      Taken the facts in the light most favorable to Plaintiff, Plaintiff has shown that personal jurisdiction exists over Ascent in Maryland. Ascent has failed to demonstrate that it did not purposefully direct its activities at the State of Maryland. While it is evident that Ascent did not initiate the relationship with Apostolic Church because Ascent was hired by Coronis to do design work for the TRUSSFRAME system, the lack of initiative on Ascent's part is insufficient to free it from being subject to jurisdiction in Maryland. Ascent claims that it only produced the preliminary designs and did not approve any of the construction drawings prior to their delivery and use by Apostolic Church, but it is clear that Ascent had substantial knowledge of the TRUSSFRAME system designed for Plaintiff. This is evidenced by Ascent's multiple suggestions to Apostolic Church, directly or indirectly, on how to fix the spreading problem. Furthermore, while Ascent claims that it only participated in one conference call with the Plaintiff's consultant in Maryland and sent one letter to Plaintiff, Ascent knew or should have known that its communications directly to Coronis suggesting possible sources of and solutions for the spreading problem would be forwarded to Plaintiff. By participating in the design of the TRUSSFRAME system for Plaintiff for use in Maryland and by providing substantial services and assistance to Apostolic Church in resolving its issues with the system, Ascent purposefully directed its activities toward the state of Maryland. Thus, Ascent should have had "fair warning" that its involvement in determining a solution for the TRUSSFRAME system's defects would subject Ascent to jurisdiction in Maryland.

In addition to determining whether Defendant Ascent purposefully availed itself of privileges of conducting activities in Maryland, the Court must also consider whether the assertion of jurisdiction is consistent with due process. See Burger King, 471 U.S. 476. The exercise of jurisdiction over a nonresident defendant comports with due process if requiring the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316. Where the defendant has purposefully directed its activities at the forum state, he has the burden of presenting a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477. Factors to consider in evaluating whether the assertion of personal jurisdiction would comport with "fair play and substantial justice" include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Id.

Due to its small size, Ascent asserts that jurisdiction is unreasonable because defending itself in a Maryland court would be particularly burdensome on the company. Ascent also argues that judicial economy would be served by dismissing Ascent from the case, thus narrowing the issues in this case. The Court finds Ascent's arguments unpersuasive. New Jersey and Maryland are not far apart geographically, so traveling to Maryland should not pose a special hardship on Ascent. See Nueva Eng'g v. Accurate Elec., 628 F. Supp. 953, 957 (D. Md. 1986) (finding that no hardship would be imposed on a Connecticut corporation by defending suit in Maryland). Maryland has a substantial interest in providing its citizens with convenient and effect relief when out-of-state companies cause injury in the state. "[T]he interstate judicial system's interest in obtaining the most

efficient resolution of controversies militates against requiring [P]laintiff to file its suit all over again" in New Jersey, "or having the Court transfer venue, especially when [D]efendant has made no showing of hardship." Id. In sum, Ascent's involvement in the design of the defective TRUSSFRAME system for a Maryland resident and in the process of fixing the system's defects justifies the assertion of personal jurisdiction in Maryland.

***Motion to Set Aside Default***

Under Rule 55(c) of the Federal Rules of Civil Procedure, the Court has the discretion to set aside a default "for good cause shown." FED. R. CIV. P. 55(c); see Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204 (4th Cir. 2006). When determining whether a defendant has shown "good cause" to set aside an entry of default, "[the] court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." Payne, 439 F.3d at 204-05. Thus, Rule 55(c) must be "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments." Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987).

Nangia asserts that the circumstances surrounding the entry of default show that Nangia's failure to file a responsive pleading was not willful or in bad faith because he reasonably relied on Coronis's assurances that its attorney would assist Nangia in this litigation. Furthermore, Nangia contends that once he realized that Coronis would not be assisting him in defending this matter, Nangia acted with reasonable promptness to have the default set aside and to hire an attorney. Apostolic Church counters that Nangia has a history of dilatory conduct and was uncooperative in responding to letters written by Plaintiff attempting to elicit Nangia's assistance in resolving the

issues with the Trussframe system. Additionally, Plaintiff also alleges that Nangia failed to establish a meritorious defense that would warrant default to be set aside.

Because Rule 55(c) does not provide a time limit for filing a motion to vacate default, the Court examines “whether a party has taken reasonably prompt action . . . in light of the facts and circumstances of each occasion.” Wainwright’s Vacations v. Pan American Airways Corp., 130 F. Supp. 2d 712, 718 (D. Md. 2001) (holding that defendant acted reasonably promptly when it moved to vacate on August 8, 2000 and default was entered on July 6, 2000). In this case, the default was entered on September 26, 2006, and Nangia moved to vacate it on November 30, 2006. In light of Nangia’s difficulty obtaining counsel and the lack of assistance promised by Coronis, the Court concludes that Nangia acted reasonably promptly.

Furthermore, Nangia can also provide a meritorious defense. “A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim.” Id. (quoting Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir, 1988)). While the movant “does not have to prove conclusively that he would prevail,” his defense must “at least raise[] serious question regarding the proprietary of a default judgment and which is supported by a developed legal and factual basis.” Id. Nangia presented facts that question Plaintiff’s claims of negligence on the part of Nangia. There is a significant issue that must be resolved of whether Nangia’s conduct was the proximate cause of the full extent of the damages Apostolic Church claims against Nangia. Therefore, Nangia proffers sufficient evidence that he has a meritorious defense to vacate the default against him.

Lastly, Apostolic Church’s claims that Nangia’s inaction has significantly prejudiced Plaintiff by preventing litigation from moving forward and by causing significant delay in the

completion of the sanctuary and significant financial expense are insufficient. Aside from arguing that delay can constitute prejudice, Plaintiff has not shown that it would be prejudiced unfairly by reopening the case. Although Apostolic Church has certainly been inconvenienced by the Nangia's late response to the allegations against him, there is no evidence that the ability of Plaintiff to argue its complaint has been impeded by the delay. See Palmetto Fed. Sav. Bank of South Carolina v. Indus. Valley Title Ins. Co., 756 F. Supp. 925, 933 (D. S.C. 1991) (noting that "events which rise to the level of prejudice include missing or dead witnesses or other events which affect the evidence which may be presented at trial"). Thus, the Court concludes that the slight prejudice, if any, experienced by Apostolic Church cannot sustain the entry of default against Nangia.

***Motion for Default Judgment***

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for the entry of default judgment by the Court. FED. R. CIV. P. 55(b)(2). The entry of default judgment is left to the discretion of the Court and the Fourth Circuit "'has a strong policy' that 'cases be decided on their merits.'" S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing Dow v. Jones, 322 F. Supp. 2d 491, 494-95 (D. Md. 2002)). However, a "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party." Lawbaugh, 359 F. Supp. 2d at 421. If default is found, the court takes well-pleaded allegations in a complaint as to liability as true, but the court must determine damages. Id. at 423.

Apostolic Church contends that default judgment is appropriate against Defendants Coronis and Nangia because they have failed to file responsive pleadings in this matter. In light of the fact that the Court has decided to set aside default as to Nangia, Plaintiff's arguments as to default judgment are moot. Therefore, the Court will deny Apostolic's Motion for Default Judgment against

Nangia. Because Coronis has been delinquent in responding, pleading, and defending itself in this action, the Court will grant Plaintiff's Motion for Default Judgment against Coronis. Furthermore, in light of the significant amount of Plaintiff's claimed damages against Coronis, an evidentiary hearing on damages is necessary and can be deferred for later determination.

**CONCLUSION**

Fore the aforementioned reasons, this Court DENIES Defendant Ascent's Motion to Dismiss the Complaint for Lack of Jurisdiction; GRANTS Defendant Nangia's Motion to Set Aside Default; and GRANTS Plaintiff Apostolic Church's Motion for Default Judgment as to Defendant Coronis, but DENIES Plaintiff's Motion for Default Judgment as to Nangia. Defendant Ascent is directed to answer or otherwise respond to Plaintiff's Complaint within ten (10) days of the entry of this Memorandum Opinion and Order. In the meantime, the Court will issue a Scheduling Order. An Order consistent with this Opinion will follow.

April 13, 2007
Date

/s/
Alexander Williams, Jr.
United States District Judge